## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| **Ascent Management, Inc.,** *et al.* | ) | Case No. 3:23-cv-00004 |
| | ) | |
| Plaintiffs, | ) | JUDGE THOMAS M. ROSE |
| | ) | |
| vs. | ) | MAGISTRATE JUDGE PETER B. SILVAIN |
| | ) | |
| **Shell Oil Company,** *et al.* | ) | **DEFENDANT VERIFONE, INC.'S** |
| | ) | **REPLY BRIEF IN FURTHER SUPPORT** |
| Defendants. | ) | **OF ITS MOTION TO DISMISS** |
| | ) | **PLAINTIFFS' COMPLAINT** |
| | ) | |

### INTRODUCTION

Plaintiffs' Opposition Brief confirms why their own Complaint fails to state a claim against Verifone.[1]  Plaintiffs do not dispute that (i) they do not allege a breach of any contract between Plaintiffs and Verifone and (ii) applicable Ohio law generally precludes negligence claims based on solely economic loss, such as Plaintiffs assert here.

Faced with well-established Ohio law barring Plaintiffs' claims on these grounds, they argue that the Court should apply "narrow and unusual exceptions" to these rules as "a matter of first impression."  The Court should decline that invitation and instead apply settled law to dismiss all claims against Verifone, as explained in Verifone's Opening Brief.

None of the cases Plaintiffs cite support the application of any such "exception" here. Plaintiffs first argue that an exception to the economic-loss rule should apply, relying on irrelevant cases that apply only in the special context of professional negligence, namely, in limited kinds of claims against architects and accountants.  Plaintiffs also argue for an exception as a "third-party

---

[1]  As used herein, "Opposition Brief" or "Opp'n Br." means *Plaintiffs' Opposition to Motion to Dismiss by Defendant Verifone* (ECF No. 28); "Opening Brief" or "Op. Br." means *Defendant Verifone, Inc.'s Motion to Dismiss Plaintiffs' Complaint* (ECF No. 14); and other capitalized terms have the same meanings as defined in the Opening Brief.

beneficiary" to a contract between Verifone and its codefendants, yet Plaintiffs fail to identify any contract provision that was entered into for the benefit of Plaintiffs and breached, let alone cite support for such a claim in the Complaint.  Plaintiffs also fail to provide an adequate basis for a fiduciary duty or "special relationship" between them and Verifone, which, again, is not pleaded in the Complaint, nor could it be.

Nor does Plaintiffs' Opposition Brief cure the fundamental flaws in their remaining claims for negligent misrepresentation, breach of express and implied warranties, and fraud.  As explained below, Plaintiffs cannot get around their basic lack of any allegation that Verifone misled them into purchasing the "Updates" at issue from the other Defendants.

Accordingly, all claims against Verifone should be dismissed for failure to state a claim under Rule 12(b)(6).

**ARGUMENT**

I. **Plaintiffs Cannot Save Their Claims from Dismissal by Rewriting Them in Their Brief or by Hoping that Discovery Will Support Them.**

As an initial matter, Plaintiffs' arguments in their Opposition fail to the extent they rely on new and conclusory assertions that they have not pleaded in their Complaint.  The law is clear that "[a] motion to dismiss 'tests the sufficiency of the complaint, not additional facts that are set forth in response to a motion to dismiss.'" *Leeper v. HealthScope Ben.*, 2020 U.S. Dist. LEXIS 47118, at *29 (S.D. Ohio Mar. 18, 2020).  Similarly, "[i]t is a basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss . . . ." *Roulhac v. Sw. Reg'l Transit Auth.*, 2009 U.S. Dist. LEXIS 154345, at *3-4 (S.D. Ohio Feb. 23, 2009); *see also Mohawk Rebar Serv. v. Int'l Ass'n of Bridge, Structural, Ornamental, & Reinforcing Iron Workers Local Union No. 17*, 2015 U.S. Dist. LEXIS 128432, at *22 (N.D. Ohio Sep. 24, 2015) ("[I]t is black letter law that a plaintiff may not cure a pleading deficiency through assertions in a brief in opposition to a

motion to dismiss."). Accordingly, "allegations in a response brief are not properly before the Court and, therefore, are not considered." *Carte v. Am. Elec. Power Serv. Corp.*, 2022 U.S. Dist. LEXIS 146932, at *25 (S.D. Ohio Aug. 16, 2022).

Here, as described more fully below, Plaintiffs make several conclusory assertions that are unsupported by any factual allegations in the Complaint. For example, Plaintiffs' Opposition now vaguely asserts that Verifone was among the Defendants that "mandated," "control[ed]" or "required" Plaintiffs to purchase the Updates (Opp'n Br. at 3, 4), while that allegation appears nowhere in the Complaint. To the contrary, the Complaint alleges that two *other* Defendants— not Verifone—issued the supposed "mandate." (*See* Compl. ¶¶ 29, 36, 140, 141.) Nor does the Opposition Brief itself provide any support for this conclusory allegation. To the contrary, the Opposition Brief concedes that the "mandate" allegedly stemmed from "Plaintiff's contract with Defendants TNE and Shell," not Verifone. (Opp'n Br. at 4.)

Relatedly, Plaintiffs' conclusory claims cannot escape dismissal based on the hope that discovery may turn up something relevant to support them. *See MSP Recovery Claims, Series LLC v. Nationwide Mut. Ins. Co.*, 594 F. Supp. 3d 947, 959 (S.D. Ohio 2022) ("[I]n order to state a claim under Federal Rule of Civil Procedure 12(b)(6), Plaintiffs must allege that their injury was caused by a specific Defendant. Plaintiffs cannot rely on discovery to provide the facts necessary to satisfy *Iqbal* and *Twombly*."); *Brickman v. Maximus, Inc.*, 2022 U.S. Dist. LEXIS 205627, at *24 (S.D. Ohio May 2, 2022) (rejecting Plaintiff's argument "that his contract claim should be allowed to survive the motion to dismiss so that he can conduct discovery to determine what the Contract says," citing Sixth Circuit precedent). Thus, to the extent Plaintiffs' arguments against dismissal depend on Plaintiffs' desire to conduct discovery to provide adequate factual support for

their claims, those arguments fail. (*See, e.g.*, Opp'n Br. at 9 (arguing that it is a "matter of discovery" to find "language of the agreement" to support Plaintiffs' claim).)

## II.     Plaintiffs Do Not Plead Any Viable Claims Against Verifone

Put simply, Plaintiffs' Opposition fails to identify any cognizable legal duty that Verifone owed to Plaintiffs, let alone a breach of such a duty. With no allegations of an applicable agreement between Plaintiffs and Verifone, solely economic loss alleged, and no pre-Update representations by Verifone, Plaintiffs have no viable claims against Verifone. Undeterred, Plaintiffs attempt to argue for several "unusual" exceptions to allow their claims to proceed, none of which have any legal basis. For clarity, we address Plaintiffs' arguments in order of their purported application to each of the counts in their Complaint, as follows:

### A.  Counts I, II, and III – Negligence

As explained in Verifone's Opening Brief, it is black-letter tort law in Ohio that there is no general duty of care to prevent economic losses. (Op. Br. at 6–7.) This well-established "economic loss rule" therefore bars Plaintiffs' negligence claims in Counts I–III. (*Id.*)

Indeed, Plaintiffs' Opposition itself cites cases stating the economic-loss rule explicitly and holding that the negligence claims at issue were barred as a result. *See, e.g.*, *Floor Craft Floor Covering v. Parma Cmty. Gen. Hosp. Ass'n*, 560 N.E.2d 206, 208 (Ohio 1990) ("For actions sounding in negligence, '[t]he well established general rule is that a plaintiff who has suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or compensable.'"); *Long v. Time Ins. Co.*, 572 F. Supp. 2d 907, 911 (S.D. Ohio 2008) ("The economic loss doctrine holds that absent tangible physical harm to persons or tangible things there is generally no duty to exercise reasonable care to avoid economic losses to others. These economic losses may be recovered in contract only.") (citations omitted).

### 1. *There Is No Applicable Exception Based on "Control" or "Knowledge"*

In an attempt to get around the economic-loss rule, Plaintiffs' Opposition relies primarily on an irrelevant line of cases recognizing a narrow exception to the rule for certain professional negligence claims—such as those asserted against architects or accountants. (*See* Opp'n Br. at 8–13.) And even then, those cases recognized that exception only in special and limited circumstances peculiar to those professions. *See J & H Reinforcing & Structural Erectors, Inc. v. Wellston City Sch. Dist.*, 2010-Ohio-2312, ¶ 35 (Ct. App.) ("[A] design professional who exercises 'excessive control over the contractor' through the power to stop the work and give orders about the project is liable for such economic damages."); *Haddon View Inv. Co. v. Coopers & Lybrand*, 436 N.E.2d 212, 215 (Ohio 1982) ("[W]e hold that an accountant may be held liable by a third party for professional negligence when that third party is a member of a limited class whose reliance on the accountant's representation is specifically foreseen.").[2] Accordingly, the cases Plaintiffs rely upon have no application whatsoever to this case. The Court should decline

---

[2]   The additional cases Plaintiffs cite on pages 11 and 12 of their Opposition Brief are likewise limited to design professionals and do not stand for the broader, novel propositions for which Plaintiffs cite them. *See Clevecon, Inc. v. Ne. Ohio Reg'l Sewer Dist.*, 628 N.E.2d 143, 144 (Ohio Ct. App. 1993) ("This appeal requires us to decide whether the absence of contractual privity is an absolute bar to malpractice liability by a design professional who causes economic damages from its architectural plans and specifications . . . ."); *Nicholson v. Turner/Cargile*, 669 N.E.2d 529, 535 (Ohio Ct. App. 1995) ("Thus, a design professional is not liable for third party economic damages when he or she does not participate in the project or interact with the contractor and signs a standard contract providing the design professional no role in construction means, methods, techniques or procedures; but a design professional who exercises 'excessive control over the contractor' through the power to stop the work and give orders about the project is liable for such economic damages."); *E.J. Robinson Glass Co. v. Pilot Contracting Corp.*, 2001-Ohio-4011 (Ct. App.) ("Specifically, where the 'supervising architect wielded excessive control over the contractor, a consequent duty arose on the part of the architect 'to perform without negligence his functions as they affect the contractor.'").

Similarly, the *Scholler* case that Plaintiffs repeatedly cite throughout their brief is an entirely irrelevant decision about a legal malpractice claim that does not address the economic-loss rule at all, and if anything, undermines Plaintiffs' position. *See Scholler v. Scholler*, 462 N.E.2d 158, 162–64 (Ohio 1984) (holding that an attorney was "immune from liability" to a person who was not in privity with his client).

As for *In re Takata Airbag Prods Liab Litig.*, 464 F. Supp. 3d 1291 (S.D. Fla. 2020) (cited in Opp'n Br. at 13, 15), that decision is irrelevant because it addresses fraud claims, which Verifone does not argue are barred by the economic-loss rule. Plaintiffs' fraud claim is addressed separately below. (*See infra* Part II.E.)

Plaintiffs' invitation to create an "unusual" and unprecedented exception to the economic-loss rule based on vague concepts of "control" or "superior knowledge" (Opp'n Br. at 13), which would apparently apply broadly to *any* provider of commercial software or communications products or services.  None of the cases Plaintiffs cite support that result, and it is simply not the law.

### 2. There Is No Applicable Exception for a "Special Relationship"

Similarly, Plaintiffs cannot escape the economic-loss rule with the conclusory assertion that they have a "special relationship" or "fiduciary like relationship" with Verifone.  (*See* Opp'n Br. at 13–14.)  Plaintiffs do not plead any claim for breach of fiduciary duty.  Nor do they plead any "special relationship" with Verifone in particular.

At most, the Complaint lumps all "Defendants" together as allegedly having a "special relationship" with Plaintiffs on the grounds that Defendants are "'so heavily involved' in vending and managing Plaintiffs' point of sales systems." (*See* Compl. ¶ 161.)  As explained in Verifone's Opening Brief, however, the bald conclusion that Verifone had "fiduciary like" obligations to Plaintiffs fails for lack of factual support in the Complaint specific to Verifone.  (Op. Br. at 12.) *See also MSP Recovery*, 594 F. Supp. 3d at 959 ("[I]n order to state a claim under Federal Rule of Civil Procedure 12(b)(6), Plaintiffs must allege that their injury was caused by a specific Defendant.").

Plaintiffs' Opposition Brief responds by merely reiterating Plaintiffs' prior assertions about "control" and "superior knowledge" (Opp'n Br. at 14) upon which they previously relied in arguing for a general exception to the economic-loss rule, as described above.  Repackaging this same argument as based on a "fiduciary like relationship" does not make it viable.  Indeed, the cases Plaintiffs cite on this point undermine their position, or are at best irrelevant.  *See Groob v. KeyBank*, 843 N.E.2d 1170, 1175 (Ohio 2006) (holding that "a fiduciary duty does not arise

6

between a bank and a prospective borrower unless there are special circumstances" and concluding that a bank's receipt of confidential information did not constitute such "special circumstances"); *Nazareth Deli LLC v. John W. Dawson Ins. Inc.*, 200 N.E.3d 652, 667 (Ohio Ct. App. 2022) (holding that there was no fiduciary relationship between an insurance agent and client, even where the relationship spanned 20 years and the client "trust[ed] their insurance agent and relie[d] on their agent's advice").

Moreover, Plaintiffs' mere allegation that they relied on Verifone's and its co-defendants' products or services does not plead the existence of a "special relationship." *See, e.g., Cuyahoga Metro. Hous. Auth. v. 10-8 Sys.*, 2006 U.S. Dist. LEXIS 8340, at *13 (N.D. Ohio Mar. 2, 2006) (the assertion that "[Plaintiff] desperately needed [the Defendants] to maintain [Plaintiff's] system" did not cure a defect in pleading a "special relationship"); *Koyo Corp. v. Comerica Bank*, 2011 U.S. Dist. LEXIS 111880, at *22 (N.D. Ohio Sep. 29, 2011) (dismissing claim against a defendant where plaintiff "does not allege any facts to suggest that it was in a relationship of confidence with [that defendant]" but "does allege that it was in a relationship of trust and confidence with [other co-defendants]").

In sum, Plaintiffs' vague and conclusory allegations about a "special relationship" with Defendants do not allow Plaintiffs to escape the economic-loss rule's preclusion of their negligence claims.

### 3. There Is No Applicable Exception for Damage to "Other Property"

Plaintiffs' Opposition also briefly argues that the economic-loss rule should not apply because "the Updates injured Plaintiffs' property, the register," which "caused refusal of acceptance of Shell Loyalty Cards." (Opp'n Br. at 7.)  That argument is meritless.  Although Plaintiffs do not cite any law in support, the so-called "other property exception" to the economic-

loss rule does not apply.  This exception holds that "the economic loss doctrine does not preclude tort recovery for personal injury or physical damage to '***other property***.'"  *Nationwide Agribusiness Ins. Co. v. CNH Am. LLC*, 2014 U.S. Dist. LEXIS 75997, at \*27 (N.D. Ohio June 4, 2014) (emphasis added).  However, this "other property" exception does not apply when "the defective product is one of several component materials that comprise a final, ***integrated product***."  *Id.* at \*28 (emphasis added) (citing *HDM Flugservice GmbH v. Parker Hannifin Corp.*, 332 F.3d 1025, 1030–32 (6th Cir. 2003)).  The rationale of this "integrated product" doctrine is to prevent an end-run around the economic loss doctrine, as follows:  "[I]f a component attached to property was not considered a part of the integrated product as a whole, purchasers who attach additional components to their property after purchase could overcome the economic loss doctrine in almost every case."  *Id.* at \*30.  Here, the allegedly defective component is the "Updates," and the alleged "other property" damaged is the register.  But as Plaintiffs expressly and repeatedly emphasize, these are indeed an "integrated system."  (*E.g.*, Opp'n Br. at 4, Compl. ¶¶ 46–47.)  Accordingly, the "other property" exception to the economic-loss rule does not apply.

### 4.  *No Other Exceptions Apply*

Plaintiffs also briefly posit several miscellaneous purported exceptions to the economic-loss rule, to no avail.

Plaintiffs' Opposition mentions in passing the irrelevant point that "intentional torts" are "exempted" from the economic-loss rule.  (Opp'n Br. at 8.)  But Plaintiffs' negligence claims are, by definition, <u>not</u> intentional torts, and therefore this "exemption" is irrelevant.  Plaintiffs' fraud claim is addressed separately below.  (*See infra* Part II.E.)

Nor do Plaintiffs' argument for "exceptions" as a "third-party beneficiary" or based on vague notions of "substitutes for privity" hold any water (Opp'n Br. at 8–9), as explained separately below with respect to Plaintiffs' breach-of-contract claim. (*See infra* Part II.B.)

And finally, Plaintiffs cite a single, irrelevant case for the proposition that the economic-loss rule does not apply because Verifone is somehow inappropriately "shielding itself with intermediaries." (Opp'n Br. at 14.) That case, however, is entirely inapposite: it does not address the economic-loss rule or negligence claims at all; rather, it addresses the privity requirement for implied-warranty claims. *See Bobb Forest Prods. v. Morbark Indus.*, 783 N.E.2d 560, 575–76 (Ohio Ct. App. 2002). But again, this argument is completely irrelevant because Verifone does not invoke the economic-loss rule as a basis to dismiss the warranty claims. Those claims are separately addressed below. (*See infra* Part II.D.)

In sum, the economic-loss rule squarely precludes Plaintiffs negligence claims, which seek recovery of solely economic losses relating to the alleged malfunctioning of Plaintiffs' payment processing systems. There is no "exception" to this rule that could possibly apply in these circumstances, which represent the paradigmatic commercial context where only contract claims, not negligence claims, can provide relief where appropriate. *See generally Floor Craft*, 560 N.E.2d at 208; *Long*, 572 F. Supp. 2d at 911.

### B. Count IV – Breach of Contract

As explained in Verifone's Opening Brief, Plaintiffs do not allege a breach of any contract between Plaintiffs and Verifone. (Op. Br. at 7–8.) Plaintiffs' Opposition does not dispute that characterization. In fact, in the section defending the adequacy of each of their claims, Plaintiffs omit any defense of their breach of contract claim whatsoever. (*See* Opp'n Br. at 15–19.)

9

Instead, elsewhere in their brief, Plaintiffs argue that they are somehow "third-party beneficiaries" of a contract among the "Defendants." (*Id.* at 8–9.)  But Plaintiffs do not plead such a claim in their Complaint, nor do they allege a factual basis for such a claim.

Under Ohio law, "[i]n order for a third person to enforce a promise made for that person's benefit, it must appear that the contract was made and entered into directly or primarily for the benefit of such third person." *Koster v. Mohammed Chowdhury*, 2016-Ohio-5704, ¶ 8 (Ct. App.). "Though third parties are often affected by a contract, only intended beneficiaries may enforce a contract. . . . If the promisee has no intent to benefit a third party, then any third-party beneficiary to the contract is merely an 'incidental beneficiary,' who has no enforceable rights under the contract." *Lucio v. Edw. C. Levy Co.*, 2017 U.S. Dist. LEXIS 71397, at \*16 (N.D. Ohio May 10, 2017).  "Further, 'the mere conferring of some benefit on the supposed beneficiary by the performance of a particular promise in a contract [is] insufficient; rather, the performance of that promise must also satisfy a duty owed by the promisee to the beneficiary.'" *Id.*

Here, however, the Complaint does not identify any particular contract or promise, let alone any factual basis indicating that a promise was made "directly or primarily" in order to benefit Plaintiffs.  Those failures are each fatal to Plaintiffs' contract claim.

Indeed, "[t]he Sixth Circuit has repeatedly held that 'it is a basic tenet of contract law that a party can only advance a claim of breach of written contract by identifying and presenting the actual terms of the contract allegedly breached.'" *Brickman v. Maximus, Inc.*, 2022 U.S. Dist. LEXIS 205627, at \*24 (S.D. Ohio May 2, 2022) (collecting cases); *see also Foster v. Health Recovery Servs.*, 493 F. Supp. 3d 622, 640 (S.D. Ohio 2020) ("The Sixth Circuit does not permit a party to allege, in a cursory manner, the existence of a contract without pointing to specific language that was allegedly breached."); *Doe v. BMG Sports, LLC*, 584 F. Supp. 3d 497, 507 (S.D.

Ohio 2022) (same).  Moreover, the failure to identify the applicable contractual language specifically forecloses a third-party-beneficiary claim.  *See Brickman*, 2022 U.S. Dist. LEXIS 205627, at \*24 (dismissing third-party-beneficiary claim because Plaintiff failed to plausibly allege his claim by "pointing to contractual language that 'clearly manifests' that he has the right to sue to enforce the Contract").  Accordingly, Plaintiffs' third-party-beneficiary theory for breach of contract fails, just as their traditional breach-of-contract theory failed.

Nor does Plaintiffs' repeated suggestion that they have some sort of "substitute for privity" with Verifone rescue their claims, regardless of whether they sound in tort or contract.  (*See* Opp'n Br. at 10, 11, 12, 13.)  Indeed, the Ohio Supreme Court rejected a similar argument seeking to avoid dismissal of a claim that was based neither on actual contractual privity nor a preexisting duty in tort.  *Corporex Dev. & Constr. Mgmt. v. Shook, Inc.*, 835 N.E.2d 701, 705 (Ohio 2005) ("Because the underlying duties are created by a contract to which DSI is not a party, no tort action lies in DSI's favor.").  As the Court explained, "privity or a sufficient nexus that could serve as a substitute for privity may impose only those contractual duties and liability for breach of those duties agreed to by the parties to the contract, and no more."  *Id.*  (rejecting plaintiff's argument that the professional-liability exception to the economic-loss rule should extend to other contexts).

Accordingly, here, any debate about a hypothetical "substitute for privity" is beside the point.  Because Plaintiffs have failed to identify any specific "duties agreed to by the parties to the contract"—or even identify the contract at all—they have likewise failed to plausibly allege a claim.

### C.  Count V – Negligent Misrepresentations and Omissions

As demonstrated in Verifone's Opening Brief, Plaintiffs fail to adequately allege that Verifone specifically—as distinguished from its co-defendants—made any misrepresentation at all. (Op. Br. at 8–9.)  And "omissions" are not actionable under this claim.  (*Id.* at 8.)

11

In response, Plaintiffs' Opposition recycles its earlier argument that Verifone had a fiduciary-like relationship to Plaintiffs, which purportedly imposed on Verifone a duty of "full disclosure." (Opp'n Br. at 15.)  But as discussed above, that argument fails because the Complaint does not adequately allege a basis for such a "special relationship." (*See supra* Part II.A.2.)  None of the additional cases Plaintiffs cite regarding this claim alter that conclusion, which again are either irrelevant or harmful to Plaintiffs' position.[3]

Indeed, under Ohio law, a negligent misrepresentation claim applies only to a limited class of professionals who are "in the business of supplying information to others," such "attorneys, surveyors, abstractors of title and banks dealing with non-depositors' checks." *Levy v. Seiber*, 57 N.E.3d 331, 340 (Ohio Ct. App. 2016); *see also Palmer-Donavin Mfg. Co. v. Rheem Sales Co.*, 2014 U.S. Dist. LEXIS 82993, at *14 (S.D. Ohio June 18, 2014) ("Usually the defendant is a professional (*e.g.*, an accountant) who is in the business of rendering opinions to others for their use in guiding their business, and the plaintiff is a member of a limited class. This 'special' relationship does not exist in ordinary business transactions."); *Duff v. Centene Corp.*, 565 F. Supp. 3d 1004, 1025 (S.D. Ohio 2021) ("[U]nder Ohio law, negligent misrepresentation 'is a business tort related to professional malpractice.'"); *Austin-Hall v. Woodard*, 2020 U.S. Dist. LEXIS 186504, at *24-25 (S.D. Ohio Oct. 7, 2020) ("This 'business tort [] is not meant to have extensive application. . . . It has no application to consumer transactions or typical business transactions.'"). Verifone plainly does not even come close to fitting into this limited class of professionals that offer business advice or information.  Rather, as the Complaint alleges, Verifone "sells electronic

---

[3]  *See, e.g.*, *Blon v. Bank One*, 519 N.E.2d 363, 368 (Ohio 1988) ("[A]bsent an understanding by both [creditor and consumer] that a special trust and confidence has been reposed in the creditor, the creditor has no duty to disclose to the consumer the existence and details of a finder's fee or similar arrangement with a credit arranger."); *Miles v. Perpetual Sav. & Loan Co.*, 388 N.E.2d 1364, 1366 (Ohio 1979) (lender who conducted termite inspection owed duty to disclose infestation to buyer); *Stone v. Davis*, 419 N.E.2d 1094, 1098 (Ohio 1981) (bank owed borrower duty to disclose how to procure mortgage insurance).

payment products and provides related services." (Compl. ¶ 23.) Accordingly, Verifone is not a proper defendant to a negligent misrepresentation claim as a matter of law.

Furthermore, Plaintiffs' Opposition Brief mischaracterizes the Complaint as having alleged that Verifone made representations that "induced Plaintiffs into buying and installing the defective updates." (Opp'n Br. at 16.) The Opposition Brief does not cite any such allegation in the Complaint, and there is none. To the contrary, the Complaint's allegations reflect that Plaintiffs' communications with Verifone about the Updates at issue began only <u>after</u> those Updates were installed by another party. (*See* Compl. ¶¶ 43–49.) Even then, the allegations are that Verifone either did not respond or said that it "could see no errors from [its] end." (*Id.* ¶¶ 52, 59.) Accordingly, there is no basis for a claim that Verifone "misled" Plaintiffs' into purchasing the Updates, negligently or otherwise. That is yet another, independent reason for dismissal of Plaintiffs' negligent misrepresentation claim. (*See* Op. Br. at 8–9.)

### D. Count VI – Breach of Express and Implied Warranties

For similar reasons, Plaintiffs' claim for breach of express and implied warranties fails. As explained in Verifone's Opening Brief, the Complaint does not identify any warranty provided by Verifone. (Op. Br. at 9–10.)

As just described, any alleged representations from Verifone came <u>after</u> Plaintiffs purchased the updates from the other Defendants, and therefore they could not have become "part of the basis of the bargain" as required to constitute an express warranty. (Op. Br. at 9.) Plaintiffs' Opposition does not engage with this point at all. Instead, it makes the irrelevant observation that there is no privity requirement for an express warranty. (Opp'n Br. at 18.) Yet the point remains that Verifone's alleged communications after the Update could not have possibly "induced" Plaintiffs into purchasing the update, as required for an express warranty claim. (*See id.* (citing

*Johnson* case stating inducement requirement).)  Plaintiffs' express warranty thus fails as a matter of law.

As for Plaintiffs' *implied* warranty claim, privity is indeed required under Ohio law, a point that Plaintiffs do not dispute.  (*See* Opp'n Br. at 17–18.)[4]  Plaintiffs' Opposition does not offer a substantive response to this point but rather briefly asserts in conclusory fashion that "Plaintiffs have otherwise established sufficient privity and nexus between the parties." (*Id.* at 18.)  But as explained in detail above and in the Opening Brief, Plaintiffs have not alleged any contractual privity with Verifone as the basis for their claims, nor have they adequately alleged some other duty running from Verifone to Plaintiffs under tort law.  (*See supra* Parts II.A–B; *see also* Op. Br. at 10.)  Accordingly, it is beyond dispute that Plaintiffs' implied warranty claim fails for lack of privity.

### E.  Count VII – Fraud

Finally, as demonstrated in Verifone's Opening Brief, Plaintiffs' fraud claim fails for lack of particularized allegations as required under Rule 9(b).  (Op. Br. at 10–12.)  Plaintiffs' Opposition does not engage with this argument and thus concedes it by implication.

Again, to be clear, the Complaint alleges that any representations from Verifone came after the Updates were installed, and therefore Plaintiffs' post hoc and conclusory assertion in their

---

[4]  Plaintiffs' Opposition nevertheless makes the puzzling assertion that "[t]he cases cited by Defendant's motion to dismiss all involved contracts with express terms which precluded the finding of an implied warranty." (Opp'n Br. at 18.)  That is inaccurate.  Verifone's Opening Brief cited two cases on implied warranties: *McKinney* and *Savett*.  (Op. Br. at 10.)  Neither case involved a contractual relationship between plaintiff and defendant, and both cases dismissed implied warranty claims for precisely that reason.  *See McKinney v. Bayer Corp.*, 744 F. Supp. 2d 733, 758 (N.D. Ohio 2010) ("Because there are no allegations that McKinney was in privity of contract with Bayer, he cannot maintain a claim for breach of the implied warranty of merchantability."); *Savett v. Whirlpool Corp.*, 2012 U.S. Dist. LEXIS 124086, at *30 (N.D. Ohio Aug. 31, 2012) ("[T]he Court finds that plaintiff's claim against Whirlpool fails because plaintiff does not allege that he is in privity with this defendant.  Ohio law requires privity in order to sustain a breach of implied warranty claim.").  So, too, should the Court dismiss Plaintiffs' implied warranty claim here.

Opposition Brief that Verifone "induced" them into the Updates does not suffice to state a claim. (*See supra* Part II.C; *see also* Op. Br. at 11.)

Moreover, Plaintiffs' Opposition fails to identify any allegation of Verifone's intent to deceive as required for a fraud claim.  Instead, it merely makes the blanket and conclusory assertion that Verifone misled Plaintiffs, "[w]hether by lack of reasonable care or by utter and reckless disregard; or with fraudulent [sic] to mislead."  (Opp'n Br. at 16.)  Worse than just conclusory, that statement does not even commit to the view that Verifone had fraudulent intent.  In any event, Plaintiffs' reliance on that generic and sweeping statement merely confirms the utter lack of a plausible factual basis for their fraud claim, let alone particularized allegations to support such a claim.

Accordingly, Plaintiffs' fraud claim against Verifone should be dismissed for failure to state a claim, along with all of Plaintiffs' other claims.

## CONCLUSION

For the reasons set forth above and in Verifone's Opening Brief, Verifone respectfully requests that this Court dismiss all claims in the Complaint against Verifone, with prejudice, for failure to state a claim upon which relief can be granted, under Rule 12(b)(6).

Respectfully submitted,

*/s/ Ross A. Wilson*
Alan H. Abes (0062423)
Ross A. Wilson (0100764)
DINSMORE & SHOHL LLP
255 E. Fifth Street, Suite 1900
Cincinnati, Ohio 45202
Phone:  (513) 977-8200
Fax:  (513) 977-8141
alan.abes@dinsmore.com
ross.wilson@dinsmore.com

*Counsel for Defendant*
*VeriFone, Inc.*

15

**CERTIFICATE OF SERVICE**

I hereby certify that on this 1st day of May, 2023, the foregoing document was electronically filed with the Clerk of Courts for the U.S.D.C. for the Southern District of Ohio via the Court's CM/ECF system, which system will notify all parties of record of the filing of the same.  The parties may access this filing through the Court's system.


/s/ Ross A. Wilson
Ross A. Wilson (0100764)